IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RODNEY HOGG**,

    **Petitioner,**                                          Case No. 2:13-cv-693

    v.

**RHONDA RICHARD, WARDEN,**         **JUDGE EDMUND A. SARGUS, JR.**
                                                        **Magistrate Judge Kemp**

    **Respondent.**

## REPORT AND RECOMMENDATION

    Petitioner, Rodney Hogg, a prisoner at the Correctional Reception Center located in Harrisburg, Ohio, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. The case is now before the Court on the petition, return of writ, Petitioner's reply, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's claim be **DENIED**.

### I.  PROCEDURAL HISTORY

    On July 21, 2010, Petitioner was indicted by a Franklin County, Ohio grand jury on charges of aggravated murder and murder. He waived a jury trial and was tried by a judge in November, 2010. Judge Richard S. Sheward found him guilty of both charges and sentenced petitioner to a term of twenty years to life in prison. The charges were merged for purposes of sentencing. Judge Sheward also denied Petitioner's motion for a new trial.

    Petitioner filed a timely notice of appeal to the Tenth Appellate District Court of Appeals. In his brief, he raised the following assignments of error:

I. THE TRIAL COURT ERROR [sic] BY MISINTERPRETING AND ACCORDINGLY MISAPPLIED THE CASTLE DOCTRINE CODIFIED IN R.C. 2901.05 & 2901.09.

II. DEFENDANT/APPELLANT'S CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT EXCLUDED MS. LOCKE'S TESTIMONY.

IV. THE CONVICTION IN THE INSTANT MATTER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

In an opinion issued on December 15, 2011, the court of appeals overruled each assignment of error and affirmed the judgment of the trial court. *State v. Hogg*, 2011 WL 6294533 (Franklin Co. App. Dec. 15, 2011) . On January 30, 2012, Petitioner filed a notice of appeal with the Ohio Supreme Court from his direct appeal. He set forth a single proposition of law:

> OHIO'S NEWLY ENCACTED (sic) CASTLE DOCTRINE, CODIFIED IN R.C. *2901.05 & 2901.09*, HAS BEEN NARROWLY INTERPRETED BY AND IS NOT IN COMPLIANCE WITH THE DOCTRINE'S LEGISLATIVE INTENT.

On April 18, 2012, the Ohio Supreme Court declined to accept the appeal for review. *State v. Hogg,* 131 Ohio St.3d 151 (April 18, 2012). This timely petition followed.

## II.  THE FACTS

The facts of this case were summarized by the state court of appeals, in its Opinion of December 15. 2011, as follows.

According to the state's evidence, defendant and his girlfriend lived on East 26th Avenue in Columbus, Ohio at the time of the incident. Around 5:15 p.m. on July 12, defendant's girlfriend was getting ready to go to a class at Columbus State Community College; at the same time, defendant was walking down the street. Defendant's girlfriend drove around the block to pick him up and, when she told him she was about to go to school, he stated he wanted to go with her so he could re-enroll in the college. She circled back to their house so defendant could lock the front door.

Defendant's girlfriend sat in the car and waited as defendant went into the house. She saw the victim walk up to the couple's house and knock on the front door, but then put her head down, as the victim frequently went to the couple's house. When she looked up, her front door was halfway open, "like [defendant] wanted [the victim] out of the house." (Tr. 93.) She then heard yelling. The victim signaled for her to come into the house where he told her that defendant had "been trying to get with [his] baby's mom and all of the other girls on the block." (Tr. 96.)

The victim's attention then focused on defendant's girlfriend; he started grabbing her, "like lustfully," and telling her he wanted to get with her. (Tr. 99.) Defendant's girlfriend told the victim he needed to leave, but the victim refused to do so. She stated the victim "smelled of alcohol," was maybe two feet from the door, and could have left the residence without having to pass either defendant or his girlfriend.

Defendant then grabbed his girlfriend and told the victim she was his "baby's mom" and the victim "need[ed] to leave ." (Tr. 99.) The victim threw a punch aimed toward defendant, and defendant stabbed the victim in the neck. Defendant's girlfriend never saw defendant get a knife and did not see him with a knife, but she stated the knife defendant used was a steak knife from the couple's kitchen. The victim then tackled defendant, and the girlfriend ran outside where she called 911. The knife wound severed part of the victim's subclavian vein and artery, a portion of the ascending aorta, and the upper lobe of the left lung, as well as nicking the third thoracic vertebra and part of the right atrium. The victim died as a result of the injury.

According to defendant's testimony, he went to his neighbor Latanya Locke's house on the morning of July 12 to see if her son was home. Locke told defendant her son was with the victim, so defendant walked down the block to the victim's house. When defendant arrived, the victim and Locke's son were sitting on the victim's back porch, drinking vodka and talking.

3

>Defendant stayed at the victim's house most of the day drinking with them. Later in the day, the victim accused defendant of "trying to talk to [his] baby's mom." (Tr. 195.) Defendant denied the accusation, but the victim "had moved his daughter to cause harm" to defendant. (Tr. 195.) At that point, defendant decided to leave the victim's house.
>
>Defendant first went to Locke's home and told her the victim "was tripping, talking about" how defendant was "trying to mess with his baby's mom." (Tr. 198.) Defendant then left Locke's house, returned home, and went out again. He called his girlfriend and told her he wanted to go to school with her to see about re-enrolling in college. She picked him up, and they went back to the house so he could freshen up. Defendant entered the residence, locked the door behind him, but then answered the door when the victim knocked. Defendant testified that once the victim was in the house, he and his girlfriend repeatedly asked the victim to leave the residence; the victim refused to leave.
>
>Defendant stated he was "very afraid" and "appalled that [the victim] came to [his] house." (Tr. 207.) According to defendant's evidence, defendant was 135 pounds and five feet seven or eight inches tall, while the victim was 245 pounds and six feet one and a half inches in height. Defendant testified that while the victim and his girlfriend were in the front room, he went to the kitchen and retrieved the knife. When he returned, defendant pulled his girlfriend back toward him. The victim then cocked back with his right fist, exposing his neck; defendant moved his girlfriend out of the way, pulled out the knife, and stabbed the victim in the neck. Defendant stated the victim began to choke him, and the two wrestled on the ground until the police arrived.

*State v. Hogg*, *supra*, at *1-2.

### III.  PETITIONER'S HABEAS CLAIM

Petitioner filed his habeas corpus petition in this Court on July 17, 2013.  In his petition, he raised the following ground for relief:

>**Ground One:** Petitioner's Due Process rights were violated when the trial court misinterpreted and misapplied the Castle Doctrine.

4

>    **Supporting FACTS:** Despite testimony supporting the Castle Doctrine, the trial court misapplied the Castle Doctrine and found Petitioner guilty of Aggravated Murder.

Respondent does not dispute that petitioner's petition for habeas corpus was timely filed. However, respondent argues that petitioner's first ground for relief was procedurally defaulted because it was not fairly presented to the Ohio courts as a federal constitutional claim. Respondent also argues that the claim, to the extent based on state law, is not cognizable in federal habeas corpus, and that the Ohio courts' decision on any issues of federal law was objectively reasonable and not contrary to established Supreme Court precedent.

### A. THE LAW OF PROCEDURAL DEFAULT

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. §2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id*.; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). But if, because

5

of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Part of the procedural default analysis involves the requirement that a federal

constitutional claim raised in a federal habeas corpus petition must have been "fairly presented" to the state courts.  If not, that claim has, in essence, not been presented at all, and if the time for doing so has elapsed, the claim is procedurally defaulted.  *Abshear v. Moore*, 354 Fed. Appx. 964 (6th Cir. Dec. 3, 2009).  As this Court has recognized, "[a] petitioner 'fairly presents' the 'substance of his federal habeas corpus claim' when the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim."  *Cowans v. Bagley*, 236 F.Supp.2d 841, 857 (S.D. Ohio 2002, *quoting Anderson v. Harless*, 459 U.S. at 6.  Conversely, if a habeas petitioner "presents an issue to the state courts under one legal theory, and then presents the issue to the federal courts under a different legal theory," the fair presentment requirement has not been satisfied; rather, "he must present to the federal court essentially the same facts and legal theories that were considered and rejected by the state courts."  *Id.*, *citing, inter alia, Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002).  Consequently, in order to determine if Petitioner's federal Due Process claim was fairly presented to the state courts, it is necessary to examine his state court filings in some detail to see how he argued the "Castle Doctrine" issue to those courts.

## B. APPLICATION TO THE FACTS

Petitioner's appellate brief filed in the Tenth District Court of Appeals is Exhibit 9 to the *Return of Writ.*  Only the first assignment of error relates to the "Castle Doctrine."  It is quoted above.  In support of that assignment of error, Petitioner's brief first quotes R.C. §2901.05(B)(1), which creates a statutory presumption that one has

7

acted in self-defense when using defensive force - even deadly force - if the actor uses it in the course of resisting or repelling someone who has entered the actor's home "unlawfully and without privilege to do so ...." He then quotes from *State v. Madera*, 2010 WL 3910750 (Cuyahoga Co. App. Oct. 7, 2010) in an effort to persuade the court that under this statutory scheme the State must overcome the presumption in order to show that the defendant was not acting in self-defense.

In contrast to the language he quotes from *Madera*, Petitioner argued that the trial court, in its decision overruling his motion for acquittal, missed the fact that this statute creates a rebuttable presumption. The trial judge cited to a different statute, R.C. section 2901.09, and concluded that other than eliminating the duty to retreat in one's own home, the General Assembly had not really changed the law of self-defense by adopting the "Castle Doctrine." According to the trial judge, the defendant still had to prove, in order to be entitled to an acquittal on grounds of self-defense, that he used only the force necessary to repel the attack. After quoting additional language from the trial court's decision, Petitioner concluded this section of his brief in this way:

> This holding reveals two very important aspects of the Trial Court's analysis under the Castle Doctrine. First, the Trial Court holds that the Castle Doctrine applied in the instant case. This determination required the Trial Court to find that the decedent was unlawfully in Defendant/Appellant's home. Second, it is evident that the Trial Court misinterpreted the Castle Doctrine to only authorize "in-kind" force when expelling or attempting to expel an individual unlawfully within one's home.
>
> Accordingly, the Trial Court misinterpreted and misapplied the

8

Castle Doctrine in the instant case.

*Appellant's Brief,* Exhibit 9, at 5-8. Petitioner did not cite to any provision of the United States Constitution or cite to any federal case law in making this argument.

The state court of appeals treated this argument as an attack on the sufficiency of the evidence, and discussed it in the context of its ruling on Petitioner's claim that the trial judge's verdict was against the manifest weight of the evidence. It overruled Petitioner's assignment of error as to this issue, finding that one of the elements triggering the application of the Castle Doctrine is that the victim was unlawfully in, or unlawfully attempting to enter, the defendant's residence. Although Petitioner testified that the victim pushed his way in, the court of appeals noted that the trial judge disbelieved that testimony and had reason to do so. Therefore, because Petitioner had not established all of the prerequisites to his claim of self-defense, the Castle Doctrine simply did not apply. *State v. Hogg, supra*, at *6-9. That portion of the court of appeals' opinion cites no federal cases and does not discuss the federal Due Process clause.

Petitioner raised only a single issue - his claim about the application of the Castle Doctrine - in his appeal to the Ohio Supreme Court. His argument in his memorandum in support of jurisdiction is almost a *verbatim* repetition of the argument he made to the Tenth District Court of Appeals. *See Return of Writ*, Exhibit 13. Because that is so, there was, again, no mention of any federally-based right which the state trial court allegedly violated.

In his traverse (Doc. 9), Petitioner argues that he did present his federal Due

9

Process claim to the state courts because the deviation which he identified between the language of the statutes, on the one hand, and the trial court's interpretation of them, on the other, deals with which party has the burden of proof on the issue of self-defense. That, he claims, is "an issue of impermissible burden shifting, which is a cognizable federal constitutional claim."  He also suggests that he did, in his brief before the Tenth District Court of Appeals, make that argument, although the page he cites (page 7) does not refer in any way to a constitutional claim.  Rather, it contains the gist of his argument that the trial judge did not understand the effect of the presumption created by R.C. 2901.05.  By implication, however, he did argue that by failing to appreciate that there was a presumption operating in the case, the trial judge improperly imposed the burden of proof on him to prove that he acted in self-defense, rather than imposing the burden on the State to show that he did not.

It is true that a habeas petitioner need not make explicit reference to the United States Constitution, nor cite to cases decided by federal courts, in order to satisfy the "fair presentation" requirement:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts well within the mainstream of constitutional litigation.

*Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987), *quoting Davis v. Attorney General*,  696

F.2d 186 (2d Cir.1982).  However, if a petitioner does not do any of these things, he has not fairly presented his constitutional claims to the state courts.

Here, Petitioner did not cite to the Constitution; did not rely on any pertinent federal cases employing constitutional analysis; and did not cite any state cases which did so.  *Madera*, the only state case he argued, also considered the issue of whether the verdict was against the manifest weight of the evidence - a quintessentially state law claim, and one not cognizable in federal habeas corpus, *see Wills v. Moore*, 2008 WL 2323786, *24 (S.D. Ohio June 3, 2008)("a claim that a verdict is against the manifest weight of the evidence ... is solely a state law claim") - and whether the jury instructions were correct under state law, also a non-cognizable claim.  *See, e.g., Buell v. Mitchell*, 274 F.3d 337, 356 (6th Cir. 2001)("the failure of the trial court to give such an instruction would be an error under state law that does not provide a basis for habeas relief").  Consequently, Petitioner must show, in the words of *Davis, supra*, that he either presented his Castle Doctrine claim to the state courts "in terms so particular as to call to mind a specific right protected by the Constitution" or that he alleged "a pattern of facts well within the mainstream of constitutional litigation."  In the Court's view, he did neither.

The "particular" terms of Petitioner's state court argument were that the trial judge did not understand, and therefore misapplied, Ohio law relating to self-defense employed by a person in his own home against an unlawful intruder.  That claim does not call to mind any provision of the United States Constitution.  Nor is the pattern of

11

facts in this case "well within the mainstream of constitutional litigation." In fact, whether Ohio's allocation of the burden of proof on the issue of self-defense - requiring that a defendant prove self-defense by a preponderance of the evidence - is consistent with the Due Process clause is an issue long ago put to rest. *See Carter v. Jago*, 637 F.2d 449, 457 (6th Cir. 1980)(it is "not a due process violation for Ohio to compel a defender to shoulder the burden of proving the affirmative defense of self-defense by a preponderance of the evidence"). Petitioner's oblique reference to burden-shifting in his appellate brief is not a "mainstream" constitutional claim, especially when he insisted that the problem in the case was not that Ohio had impermissibly shifted the burden of proof to him - he argued that, in fact, the state legislature had *relieved* him of the burden of proof by adopting the Castle Doctrine - but that the trial judge reallocated that burden to him not in violation of any constitutional prohibition against doing so (and, under *Carter*, there is no such prohibition) but in violation of the Ohio Revised Code. It is hard to imagine a claim more clearly founded on state law, nor one which is less likely to call to mind in clear or unmistakable terms a federal constitutional right.

As the Court of Appeals stated in *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011), when "[t]he bottom line is that the state courts were not called upon to apply the legal principles governing the constitutional claim now presented to the federal courts," the Petitioner has not satisfied the "fair presentment" requirement. That is the "bottom line" here. The actual due process violation which Petitioner urges on this Court has nothing to do with the trial judge's understanding of the interplay between R.C.

§§2901.05 and 2901.09 or with any notion of impermissible shifting of the burden of proof; it is, as articulated in the traverse, a claim founded on this quotation from *Dowling v. United States*, 493 U.S. 342, 352 (1990): that Petitioner's conviction violated "those fundamental conceptions of justice which lie at the base of our civil and political institutional and which define the community's sense of fair play and decency." *See Traverse*, Doc. 9, at 6.  That is so, Petitioner claims, because the facts (or at least his version of them) strongly suggest that he acted in self-defense, and doing so is completely inconsistent with a verdict of guilty on a charge of aggravated murder.  The state courts had no opportunity to consider this argument, and Petitioner has no further opportunity to present it there.  This claim was not fairly presented to the state courts, was thereby procedurally defaulted, and cannot be considered on its merits in this Court.  Because Petitioner argues only that he satisfied the "fair presentment" requirement, and makes no argument on the issues of cause or prejudice, the Court need not address whether his failure to present his Due Process claim to the state courts can be excused.

  The Court adds this final note.  The state court of appeals probably had it right when it treated Petitioner's argument as one relating to the sufficiency of the evidence. Rather than finding that the trial judge either did, or did not, correctly interpret Ohio law as it relates to the Castle Doctrine, the court of appeals found that the doctrine did not apply here because, based on the evidence as interpreted by the trial judge, the victim entered Petitioner's residence in a lawful manner.  Once that had been

13

determined, the question was simply whether Petitioner proved that he used only reasonable force in self-defense. The trial judge concluded that he did not. Petitioner has not challenged, in this Court, the trial judge's factual findings either on the issue of lawful entry or the use of unreasonable force, and those are findings this Court must accept under 28 U.S.C. §2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct"). These factual findings substantially undercut all of Petitioner's arguments, because those arguments are premised on his version of the facts, and particularly on his claim that the victim entered the residence unlawfully. Given the high hurdles that must be navigated for a federal habeas petitioner to mount a successful challenge to the sufficiency of the evidence in a state court proceeding, *see Haas v. Warden*, 2013 WL 3367087, *6 (S.D. Ohio July 5, 2013), *adopted and affirmed* 2013 WL 4725186 (S.D. Ohio Sept. 3, 2013), it is not surprising that Petitioner has not made this argument; but, having not made it, he is in no position to claim that the state trial judge got the facts wrong. Therefore, even were the Court to consider the merits of Petitioner's Due Process claim, because that claim is based on a version of the facts contrary to that found by the state courts, this Court would not likely grant him any relief.

## IV.  RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition be **DENIED** and that this case be **DISMISSED**.

## V.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge